FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 08, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD WHITE, JR., <br><br> Plaintiff, <br><br> v. <br><br> BRIAN EWERT, JR., <br><br> Defendant. | No. 4:16-CV-05122-SMJ <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, is Defendant Brian Ewert, Jr.'s Motion for Summary Judgment, ECF No. 30. Ewert, a Corrections Officer at the Washington State Penitentiary, asks the Court to dismiss *pro se* prisoner Plaintiff Donald White, Jr.'s 42 U.S.C. § 1983 action, in which White claims Ewert violated his rights by delaying his toilet use, withholding his meals, and reading his legal mail. Ewert argues (1) none of White's claims amount to constitutional violations, (2) White's second claim is barred by the statute of limitations and the failure to exhaust administrative remedies, and (3) Ewert is entitled to qualified immunity on all of White's claims.

After reviewing the record and the relevant legal authority, the Court is fully informed. For the reasons below, the Court concludes summary judgment is

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT **-** 1

appropriate on White's first and second claims but a genuine dispute of material fact requires trial resolution of White's third claim.

## BACKGROUND[1]

White is a Washington state prisoner. ECF No. 15 at 2; ECF No. 20 at 2. White has been a paraplegic since 2006. ECF No. 15 at 4; ECF No. 20 at 2. Ewert has worked for the Washington State Department of Corrections (DOC) since 2007 and has become familiar with White in that time. ECF No. 32 ¶¶ 2−3.

In 2015, White filed a lawsuit in this Court against Ewert and other corrections officers. ECF No. 15 at 6, 10; ECF No. 17 at 19−20; ECF No. 20 at 3. In the lawsuit, White alleged Ewert violated his rights by reading his legal mail, among other acts and omissions. ECF No. 15 at 6, 10; ECF No. 20 at 4. The Washington State Attorney General's Office (AG) defended Ewert in White's lawsuit against him. ECF No. 15 at 6; ECF No. 20 at 4. White settled his lawsuit against Ewert in 2016 because the AG made him a reasonable offer. ECF No. 15 at 8; ECF No. 20 at 4.

The AG sent the settlement offer to White in a letter dated October 19, 2015. ECF No. 17 at 38−39; *see also* ECF No. 15 at 6, 10; ECF No. 31 at 3. On October 20, 2015, during the 6:00 p.m. pill line, Ewert asked White to follow him from a

---

[1] As required by the applicable legal standard, the Court sets forth the evidence and reasonable inferences in the light most favorable to White, the nonmoving party.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

corrections officer station to a table next to a metal detector so he could give White his incoming legal mail from the AG. ECF No. 1 at 4; ECF No. 15 at 5−6. The mail was addressed from the AG and had Bob Ferguson's name on it. ECF No. 1 at 4; ECF No. 15 at 6. Ewert opened White's mail from the AG, removed all five pages, inspected the large empty envelope for contraband, and read all five pages, word for word, for a very long time. ECF No. 1 at 5; ECF No. 15 at 6. Ewert did all of these things in White's presence. ECF No. 1 at 5; ECF No. 15 at 6. When Ewert finished reading White's mail from the AG, he looked at White with an intimidating stare. ECF No. 1 at 5; ECF No. 15 at 6. White speculates that Ewert was trying to provoke him to act out so Ewert had a reason to throw him in the Intensive Management Unit.

On September 12, 2016, White filed a complaint claiming Ewert violated his rights by reading his incoming mail from the AG on October 20, 2015. ECF No. 1 at 4−5. White declared under penalty of perjury that his allegations were true and correct. *Id.* at 4. In his complaint, White also claimed Ewert violated his rights by delaying his toilet use for ten minutes on one occasion when he had a bladder emergency and withholding his meals overnight when he could not get off the toilet in time to attend dinner. *Id.* at 3−4.

On March 30, 2017, White filed an amended complaint re-alleging his prior claims and seeking declaratory and injunctive relief as well as monetary damages.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

ECF No. 15 at 4−6, 8. In his amended complaint, White claims Ewert withheld his meals "[s]everal times during 2013 and 2014." *Id.* at 5. White did not file a DOC grievance properly addressing this claim. ECF No. 33 ¶ 14.

Ewert moved for summary judgment on June 12, 2018. ECF No. 30. White responded to the motion on July 3, 2018 and Ewert replied on July 9, 2018. ECF Nos. 36 & 39.

In support of the motion, Ewert submitted the following declaration explaining DOC Policy 450.100, which governs White's legal mail:

> . . . My official duties include handling legal mail for inmates which includes inspecting incoming and outgoing legal mail in front of the inmate pursuant to DOC Policy 450.100. The policy provides for checking the envelope for contraband and scanning the contents to ensure that they meet the requirement for legal mail. The inmate is always present at the time of the opening of incoming legal mail.

ECF No. 32 ¶ 11. DOC Policy 450.100 reads, in relevant part,

> A. Offenders have the ability to correspond by means of legal mail. Legal mail must meet all of the following requirements and is subject to inspection to ensure the contents qualify as legal mail:
>
> 1. Legal mail must be correspondence to or from, as indicated in the mailing address or return address on the front of the envelope:
>
>    a. Any court or opposing counsel/party . . . .
>
>    b. . . . the United States Department of Justice, state attorneys general . . . .
>
>    c. The attorney of record in court cases that have been filed in a local, state, or federal court.

     d. An attorney corresponding with the offender concerning legal advice, including established groups of attorneys representing the offender . . . .

. . . .

 D. Legal Mail Procedures

    1. Incoming legal mail will be opened in the offender's presence by designated employees. Employees are authorized to inspect the contents to ensure they meet the policy requirements for legal mail and do not contain contraband or any other material that would threaten facility order or security.

ECF No. 32-1 at 7−8.

  In opposition to the motion, White says, "[e]vidence supporting my claim are suveillance [sic] videos of Defendant Ewert reading my legal mail," and "[m]y disputed facts are Defendant retaliated against me because I had a ongoing federal claim against him and he really wanted to push me enough to yelling at him which gives Defendant excuse to throw me in [the Intensive Management Unit]." ECF No. 36 at 1−2. White certified that his factual statements were true and correct. *Id.* at 2.

### **LEGAL STANDARD**

  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets this burden, the nonmoving party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the

nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant a summary judgment motion. *Id.* at 322. "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (internal quotation marks omitted). When considering a summary judgment motion, the Court does not weigh the evidence or assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court may consider a *pro se* litigant's contentions offered in motions or pleadings as evidence "where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the litigant] attest[s] under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *see also, e.g.*, *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (concluding a *pro se* prisoner's factual statement, which he swore was "true and correct," functioned as an affidavit); *Schroeder v. McDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995)

(concluding a *pro se* prisoner's complaint functioned as an affidavit because he "stated under penalty of perjury that the contents were true and correct").[2]

**DISCUSSION**

**A.    Delaying toilet use**

Ewert argues he did not violate White's constitutional rights by allegedly delaying his toilet use for ten minutes on one occasion when he had a bladder emergency. ECF No. 30 at 4. White does not respond to this argument. ECF No. 39. Ewert's argument is persuasive. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). White has failed to show Ewert acted or failed to act with deliberate indifference to his health or safety, despite knowledge of a substantial risk of serious harm to him. *See Farmer v. Brennan*, 511 U.S. 825, 835, 842 (1994). Therefore, the Court grants Ewert's summary judgment motion as to White's first claim. Accordingly, the Court does not reach Ewert's argument that he is entitled to qualified immunity on this claim.

**B.    Withholding meals**

Ewert argues White's second claim is barred by the statute of limitations and

---

[2] Considering these legal authorities, the Court construes White's original complaint and motion opposition as affidavits because within them, White certifies or declares under penalty of perjury that his allegations are true and correct. ECF No. 1 at 4; ECF No. 26 at 2. Additionally, White's original complaint and motion opposition are consistent with his amended complaint, both of which are based on personal knowledge and set forth facts that would be admissible in evidence in some form.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT **-** 7

the failure to exhaust administrative remedies. *Id.* at 5−6. White does not respond to this argument. ECF No. 39.

Because White raised this claim in his original complaint on September 12, 2016, Ewert's argument on the statute of limitations is correct regarding meals he allegedly withheld in some periods of 2013 but is incorrect regarding meals he allegedly withheld in 2014. *See* Wash. Rev. Code § 4.16.080(2); *Boston v. Kitsap Cty.*, 852 F.3d 1182, 1185 (9th Cir. 2017).

Nevertheless, because White did not file a DOC grievance properly addressing this claim, Ewert's argument on the failure to exhaust administrative remedies is correct regarding any meals he allegedly withheld in either 2013 or 2014. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856−58 (2016).

Therefore, the Court grants Ewert's summary judgment motion as to White's second claim. Accordingly, the Court does not reach Ewert's arguments that he did not violate White's constitutional rights by allegedly allowing him to miss occasional meals or that he is entitled to qualified immunity on this claim.

**C.     Reading legal mail**

Ewert argues he did not violate White's constitutional rights by allegedly reading mail addressed to White from the AG, which at the time represented Ewert in White's pending lawsuit against him. ECF No. 30 at 2, 6−7. With scant citation to legal authority, Ewert contends "[t]here is no constitutional requirement to treat

mail between White and the Attorney General's Office opposing his other lawsuit as constitutional legal mail." ECF No. 30 at 6−7. The Court disagrees.

### 1. The First Amendment prohibits a prison official from reading a prisoner's incoming mail, whether legal or personal, in an arbitrary and capricious manner.

A prisoner retains a First Amendment right to send and receive mail to the extent consistent with legitimate penological interests. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995); *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004). But this right is subject to substantial limitations and restrictions to allow prison officials to achieve legitimate correctional goals and maintain institutional security.[3] *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005).

A prisoner's First Amendment right to send and receive mail includes "protection against unjustified governmental interference with the intended communication." *Procunier v. Martinez*, 416 U.S. 396, 408–09 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Thus, a prison official's unreasonable interference with a prisoner's mail violates this right. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1154, 1158–59 (E.D. Wash. 2014) (denying a prison guard's summary judgment motion on a prisoner's First

---

[3] A prison regulation burdening a prisoner's constitutional right is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This test applies to a limitation or restriction on a prisoner's incoming mail. *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Amendment claim where the guard acted outside the scope of a DOC policy governing the prisoner's personal mail for reasons unrelated to any legitimate penological interest).

For example, a prison official violates this right by opening and reading a prisoner's incoming mail in an arbitrary and capricious manner. *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003); *e.g.*, *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (sustaining a prisoner's First Amendment claim based on a prison guard's "arbitrary opening and reading of [the prisoner's] personal mail" with no proffered justification other than harassment, and reasoning such "[a] capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment"); *Riley v. Kurtz*, 194 F.3d 1313 (6th Cir. 1999) (unpublished table decision) (holding a prison guard was not entitled to qualified immunity on a prisoner's First Amendment claim where the guard read the prisoner's incoming mail to see if the guard was named as a defendant in the prisoner's lawsuit, and reasoning the issue did not turn on the reasonableness of any regularly applied prison policy because "this case involves the actions of one guard who was allegedly acting against clear prison policy").

**2. Additionally, the First Amendment prohibits a prison official from reading a prisoner's incoming civil legal mail.**

A prisoner's legal mail receives heightened protection under the First Amendment. In 1974, the Supreme Court held "prison officials may open, *but not*

*read*, incoming legal mail in the presence of the inmate." *Nordstrom v. Ryan* (*Nordstrom II*), 856 F.3d 1265, 1272 (9th Cir. 2017) (emphasis added) (explaining *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)).

This rule applies to a prisoner's incoming civil legal mail. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208, 1211 (9th Cir. 2017). Because "prisoners' communications with civil attorneys often relate to lawsuits challenging the conditions of confinement in the prison or wrongful conduct of prison employees," "[w]hen prison officials open legal mail, prisoners may justifiably be concerned about retaliation from the very officers the prisoner has accused of wrongdoing." *Id.* at 1210. Thus, "the only way to ensure [a prisoner's incoming civil legal] mail is *not read when opened* is to require that it be done in the presence of the inmate to whom it is addressed." *Id.* at 1211 (emphasis added) (quoting *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)).

### 3. White's incoming mail from the AG was legal mail requiring confidentiality under the First Amendment.

Not all incoming mail concerning a prisoner's legal matters qualifies as legal mail requiring confidentiality, however. Initially, the distinction is whether the mail is from an attorney rather than a non-attorney. *See Wolff*, 418 U.S. at 574−76 (describing legal mail as incoming mail "from attorneys to inmates" and "from an attorney"); *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (concluding mail a court sent to a prisoner was not legal mail); *O'Keefe v. Van Boening*, 82 F.3d 322,

323, 325−27 (9th Cir. 1996) (concluding mail a prisoner sent to "various state officials and agencies" was not legal mail while noting the prisoner "has not been denied all means of petitioning state agencies and officials without having such communications read by prison officials" because "[t]he definition of legal mail is sufficiently broad to permit [the prisoner] to petition the state attorney general . . . for redress of grievances"), *rev'g O'Keefe v. Murphy*, 860 F. Supp. 748, 751 (E.D. Wash. 1994) (specifying the mail at issue was "between an inmate and non-attorneys—i.e., government agencies and officials"); *Sallier*, 343 F.3d at 877 (concluding "as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights").

The Court finds no controlling legal authority requiring that an attorney who sends mail to a prisoner must be currently and actively representing the prisoner for the protections of legal mail to apply. Such a rule could lead to absurd results. For example, a legal aid clinic could respond to a prisoner's request for representation by seeking more information but, because the clinic does not yet represent the prisoner, a prison official could open the mail outside the prisoner's presence and read about the prisoner's confidential legal matters with impunity.

Ultimately, mail an attorney sends to a prisoner is legal mail requiring confidentiality under the First Amendment if "the attorney and inmate have a fundamental interest in maintaining the confidentiality of communications relating

to a legal matter." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 644 (6th Cir. 2015). For a prisoner, this fundamental interest arises "when the incoming mail . . . impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier*, 343 F.3d at 874. While the Ninth Circuit has not addressed whether mail a state attorney general sends to a prisoner is legal mail requiring confidentiality under the First Amendment, the Sixth Circuit has held it is in *Muhammad v. Pitcher*, 35 F.3d 1081, 1082–85 (6th Cir. 1994).

In *Muhammad*, the court determined that "treating mail sent from the state attorney general as ordinary mail rather than legal mail . . . burden[ed a prisoner]'s First Amendment rights." *Id.* at 1084–85. Like Ewert, the prison officials contended the prisoner "ha[d] no interest in maintaining confidentiality regarding mail from the Attorney General" because "the Attorney General's Office represents the prison and so is adverse to the inmates." *Id.* at 1082. And like Ewert, the prison officials argued it was "difficult to imagine what confidentiality Plaintiff can claim in mail sent to him by the Attorney General, acting as opposing counsel in litigation initiated by Plaintiff." *Id.*

The court rejected this argument, stating it "indicates a surprising lack of imagination" because "the Attorney General's Office frequently serves prisoners in the very same way that legal assistance organizations . . . do." *Id.* at 1083. The court

noted "[a]n inmate may correspond with the Attorney General for many reasons: to inquire about legal remedies, to negotiate about future prosecutions, to complain about prison conditions, etc." *Id.* As the court reasoned, "correspondence from the Attorney General's Office is no different than correspondence from any other legal assistance organization that [the prison] already treats as legal mail." *Id.* Thus, the court concluded "a prisoner has a fundamental interest in maintaining the confidentiality of such correspondence." *Id.*

This reasoning is persuasive in part because it matches the DOC's current practices on how to classify and handle mail a state attorney general sends to a prisoner. *See* ECF No. 32-1 at 7−8; Wash. Admin. Code § 137-48-020(6)(a)–(b) (defining legal mail as "correspondence to or from . . . [a]ny . . . opposing attorney/party . . . [and] state attorneys general"); *id.* § 137-48-030(3) (providing "[l]egal mail *shall not be read* but may be inspected in the presence of the inmate to verify legal mail status and that the mail is free of contraband" (emphasis added)). This reasoning is also persuasive because it comports with the Ninth Circuit's statement that "[t]he definition of legal mail is sufficiently broad to permit [a prisoner] to petition the state attorney general . . . for redress of grievances." *O'Keefe*, 82 F.3d at 326.

Thus, the Court concludes White's incoming mail from the AG was legal mail requiring confidentiality under the First Amendment.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT **-** 14

### 4. A genuine dispute of material fact exists on whether Ewert read White's incoming mail from the AG in violation of the First Amendment.

Ewert does not dispute White's allegation that he read his incoming mail from the AG on October 20, 2015. ECF No. 31 at 3; ECF No. 32 ¶ 11. Instead, Ewert speaks in generalities about his official duties and DOC Policy 450.100's inspection requirements for a prisoner's incoming legal mail. ECF No. 32 ¶ 11. Ewert says he is required to "check[] the envelope for contraband and scan[] the contents to ensure that they meet the requirement for legal mail." *Id.*

A prison official has every right to inspect a prisoner's mail for contraband or other material threatening facility order or security. *Nordstrom v. Ryan* (*Nordstrom I*), 762 F.3d 903, 906 (9th Cir. 2014). "But *inspecting* letters and *reading* them are two different things, as the Supreme Court recognized in *Wolff*." *Id.* Thus, the Ninth Circuit has held a prison official's page-by-page inspection of a prisoner's mail to determine if its contents actually concerned legal matters violated his First Amendment right. *Nordstrom II*, 856 F.3d at 1273−74. The court suggested "[a]t most, a proper inspection entails looking at a letter to confirm that it does not include suspicious features . . . and making sure that illegal goods or items that pose a security threat are not hidden in the envelope." *Id.* at 1272. "[E]ven a single instance of improper reading of a prisoner's mail can give rise to a constitutional violation." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT **-** 15

It is important to identify the precise nature of the conduct at issue here. Ewert attempts to frame this case in terms of whether he had a right to inspect White's incoming mail from the AG in accordance with DOC policy. A close examination of the record, however, indicates DOC policy would not authorize Ewert to read such mail, page by page, for a very long time, as White alleges he did. On the contrary, under DOC Policy 450.100, a prisoner's incoming mail from any opposing counsel or any state attorney general qualifies as legal mail and is subject only to a limited visual inspection rather than a full content review. *See* ECF No. 32-1 at 7−8; *see also* ECF No. 32 ¶ 11. Thus, the Court does not review the validity of any DOC policy. Instead, this case involves the actions of one corrections officer who allegedly acted against clear DOC policy.

Ewert's conduct, if proven, violated White's First Amendment right in two respects: (1) it violated White's right to be free from any reading of his incoming civil legal mail, which extends to mail the AG sent to him; and (2) it violated White's right to be free from arbitrary and capricious reading of his mail, regardless of whether it is legal or personal.

Ewert has failed to show there is no genuine dispute of material fact and he is entitled to judgment as a matter of law. Viewing the evidence and reasonable inferences in the light most favorable to White, a genuine dispute of material fact

exists on whether Ewert read White's incoming mail from the AG in violation of the First Amendment.

### 5. Ewert is not entitled to qualified immunity if he read White's incoming mail from the AG in violation of the First Amendment.

Ewert argues he is entitled to qualified immunity because no "clearly established law demonstrat[es] the unconstitutionality of any of these acts." ECF No. 30 at 7. Ewert does not support this assertion with any analysis concerning any form of mail whatsoever.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984). A right is clearly established when "a reasonable official would understand that what he is doing violates that right . . . [because] in the light of pre-existing law the unlawfulness [is] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief." *Presbyterian Church (U.S.A.) v.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

*United States*, 870 F.2d 518, 527 (9th Cir. 1989). White seeks declaratory and injunctive relief as well as monetary damages. ECF No. 15 at 8. Thus, contrary to Ewert's argument, qualified immunity would not dispose of this entire lawsuit even if it applied.

As discussed above, Ewert's conduct, if proven, violated White's First Amendment right in two respects: (1) it violated White's right to be free from any reading of his incoming civil legal mail, which extends to mail the AG sent to him; and (2) it violated White's right to be free from arbitrary and capricious reading of his mail, regardless of whether it is legal or personal. The issue is whether these rights were clearly established in 2015, when the alleged conduct occurred.

The Court finds the first right listed above was not clearly established in 2015 because district courts within the Ninth Circuit have reached different conclusions on this issue. *See, e.g.*, *Pitts v. Tuitama*, No. CV 17-00137 JMS-KSC, 2017 WL 3880653, at *5 (D. Haw. Sept. 5, 2017); *Smith v. Jovanovich*, No. CV1600048HDLCJTJ, 2017 WL 1403330, at *3 (D. Mont. Jan. 11, 2017), *report & recommendation adopted*, No. CV 16-0048-H-DLC-JTJ, 2017 WL 1410781 (D. Mont. Apr. 19, 2017).

However, the Court finds the second right listed above was clearly established long before 2015. *See Procunier*, 416 U.S. at 408–09 (declaring in 1974 that a prisoner's First Amendment right to send and receive mail includes

"protection against unjustified governmental interference with the intended communication"); *Grenning*, 34 F. Supp. 3d at 1159 (concluding a prison guard was not entitled to qualified immunity on a prisoner's First Amendment claim because "the right to be free from arbitrary mail searches was clearly established in 2010"); *Riley*, 194 F.3d 1313 (holding a prison guard was not entitled to qualified immunity on a prisoner's First Amendment claim where the guard read the prisoner's incoming mail to see if the guard was named as a defendant in the prisoner's lawsuit because the right to be free from such behavior was clearly established before 1992).

In 2015, a reasonable prison official would understand that he or she was legally prohibited from reading mail the AG sent to a prisoner, absent a legitimate penological interest justifying the intrusion. In light of preexisting law, the unconstitutionality of such conduct was apparent. The fact that such conduct also violated DOC Policy 450.100 further undermines Ewert's argument that he was unaware of his legal obligations in handling White's mail. *See Al-Amin v. Smith*, 511 F.3d 1317, 1336 (11th Cir. 2008).

Therefore, Ewert is not entitled to qualified immunity if he read White's incoming mail from the AG in violation of the First Amendment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 30**, is **GRANTED IN PART** and **DENIED IN PART**.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT **-** 19

**A.** Defendant's motion is granted as to Plaintiff's first and second claims in his amended complaint, claims A and B in ECF No. 15 at 4−5.

**B.** Defendant's motion is denied as to Plaintiff's third claim in his amended complaint, claim C in ECF No. 15 at 5−6.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 8th day of August 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge